# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |  |
|---|---|---|
| DANIEL RODRIGUEZ, | ) | No.  CV 08-3815-PLA |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

## I.

## PROCEEDINGS

Plaintiff filed this action on June 13, 2008, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments.   The parties filed Consents to proceed before the undersigned Magistrate Judge on June 27, 2008, and July 26, 2008.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 24, 2009, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

## BACKGROUND

Plaintiff was born on December 22, 1960.  [Administrative Record ("AR") at 55, 157.]  He has an eleventh grade education.  [AR at 55-56, 171.]  Plaintiff has past work experience as a truck driver helper, store laborer, baker's helper, construction worker, and a kitchen helper.  [AR at 32, 56-59, 166.]

On November 22, 2000, plaintiff protectively filed his application for Supplemental Security Income payments, alleging that he has been unable to work since November 22, 2000, due to mental stress.  [AR at 157-60, 164-65.]  After his application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 94, 96-99, 104.]  A hearing was held on August 14, 2003, at which plaintiff appeared with counsel and testified on his own behalf.  [AR at 51-93.]  A vocational expert and a medical expert also testified.  [AR at 68-90.]  On October 24, 2003, the ALJ determined that plaintiff was not disabled.  [AR at 31-41.]  Plaintiff requested review of the hearing decision.  [AR at 25.]  The Appeals Council denied plaintiff's request for review on March 11, 2005.  [AR at 4-8.]

Plaintiff then filed an action in District Court, Case No. CV 05-2643-PLA, challenging the Commissioner's decision.  On April 5, 2006, the Court remanded the matter with instructions to evaluate the severity of plaintiff's mental impairment in light of the recently submitted new evidence.  [AR at 443-52.]  On August 9, 2006, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2006 Order.[1]  [AR at 460-61.]  On March 3, 2008, a second hearing was held, at which plaintiff did not appear but was represented by counsel.  [AR at 652-71.]  Testimony was received from medical and vocational experts.  [AR at 656-71.]  On April 9, 2008, the ALJ determined that plaintiff was not disabled.  [AR at 409-18.]  This action followed.

---

[1]   Based on a subsequent application filed on November 30, 2004, plaintiff was found disabled beginning November 1, 2004.  [AR at 417, 460.]  The Appeals Council found no reason to disturb the subsequent allowance.  [Id.]

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.


**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.


**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.   The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity between November 22, 2000 (the application date), and October 31, 2004 (the last day of the period under consideration).[2]  [AR at 412.]  At step two, the ALJ concluded that plaintiff has the medically determinable impairments of drug addiction and/or alcohol abuse and a history

_____

[2]    As noted above, based on a subsequent application, plaintiff was found to be disabled beginning November 1, 2004.  [AR at 417.]

of seizure disorder.[3]  [AR at 412.]  The ALJ noted that plaintiff failed to establish any mental impairment other than drug use and alcohol abuse.  [AR at 416.]  The ALJ determined that absent drug addiction and/or alcohol abuse, plaintiff does not have a severe impairment or combination of impairments.  [AR at 412, 416-17.]  The ALJ indicated that "[b]ecause [plaintiff] is not disabled absent substance use, his substance use disorder would be a contributing factor if he were determined to be disabled."  [AR at 417 (citations omitted).]  Accordingly, the ALJ found plaintiff "not disabled within the meaning of the Social Security Act at any time from the date the application was filed through October 31, 2004."  [AR at 417.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) improperly evaluated the opinions of plaintiff's treating psychiatrist; and (2) improperly declared plaintiff a non-essential witness.  Joint Stipulation ("Joint Stip.") at 5.  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

Plaintiff contends that the ALJ did not properly consider the treating psychiatrist's opinion.  Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of plaintiff's treating psychiatrist, Dr. Hian Biauw Oey.  Joint Stip. at 5.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater

---

[3]   The ALJ also concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing and that plaintiff had no past relevant work.  [AR at 415.]

1  weight than those of other physicians, because treating physicians are employed to cure and
2  therefore have a greater opportunity to know and observe the claimant.  See Smolen v. Chater, 80
3  F.3d 1273, 1285 (9th Cir. 1996); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)
4  (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's
5  opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability.
6  See Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).

7      "'The administrative law judge is not bound by the uncontroverted opinions of the claimant's
8  physicians on the ultimate issue of disability, but he cannot reject them without presenting clear
9  and convincing reasons for doing so.'"  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)
10  (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see
11  also Lester, 81 F.3d at 830.  Where the treating physician's opinion on disability is controverted,
12  it can be rejected only with specific and legitimate reasons supported by substantial evidence in
13  the record.  See Lester, 81 F.3d at 830.  "The opinion of an examining physician is, in turn, entitled
14  to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  As is the
15  case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons
16  for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate
17  reasons supported by substantial evidence in the record to reject the contradicted opinion of an
18  examining physician.  See id. at 830-31.

19      On July 24, 2001, Dr. Oey performed a psychiatric evaluation of plaintiff.  [AR at 360-64.]
20  He noted plaintiff's chief complaints as "[gets] angry easily" and "doesn't like authority."  [AR at
21  360.]  He indicated, among other things, that plaintiff was "somewhat tense" and "a little loud."  [AR
22  at 363.]  He found that plaintiff had impaired memory and concentration, an anxious mood,
23  violent/destructive behavior, poor impulse control, excessive/inappropriate anger, and antisocial
24  behavior.  [AR at 363.]

25      On September 11, 2001, Dr. Oey completed a progress note in which he found that plaintiff
26  "still [gets] angry easily," and is depressed and paranoid.  [AR at 357.]  Dr. Oey prescribed Paxil
27  and Buspar to plaintiff.  [AR at 357.]  On that same day, Dr. Oey completed a Mental Work
28  Restriction Questionnaire concerning plaintiff's mental limitations.  [AR at 331-32.]  Dr. Oey

1   indicated that plaintiff suffered from intermittent explosive disorder. [AR at 331.] He found that
2   plaintiff was moderately impaired in his ability to remember work like procedures, understand and
3   remember short and simple instructions, and carry out short and simple instructions. [AR at 331.]
4   Dr. Oey also found that plaintiff was markedly impaired in his ability to, among other things,
5   maintain attention for 2 hour segments, maintain regular attendance and be punctual, sustain an
6   ordinary routine without special supervision, make simple work-related decisions, and respond
7   appropriately to changes in a work setting. [AR at 331-32.] He further found that plaintiff was
8   severely impaired in his ability to work in coordination with or in close proximity to other people
9   without being distracted by them, accept instructions and respond appropriately to criticism from
10  supervisors, and get along with co-workers or peers without distracting them or exhibiting
11  behavioral extremes. [AR at 332.] Dr. Oey noted that plaintiff's medications included Paxil and
12  Buspar. [AR at 332.] He concluded that plaintiff's prognosis was guarded. [AR at 332.] In
13  addition, on the same date, Dr. Oey completed an Evaluation Form for Mental Disorders
14  concerning plaintiff's condition. [AR at 333-36.] Dr. Oey noted that plaintiff's symptoms included
15  mood swings, anxiousness, isolationism, irritability, and poor impulse control. [AR at 333.] Dr.
16  Oey performed a mental status examination in which he noted that plaintiff's attitude was fearful
17  and indicated that plaintiff was easily agitated and irritable. [AR at 334.] He found that plaintiff had
18  trouble with his concentration level and memory, as well as trouble taking orders. [AR at 334.]
19  Dr. Oey noted that plaintiff "is anxious of other people and what they may or might do to him." [AR
20  at 334.] He indicated that plaintiff "tends to isolate and withdraw from situations . . . ." [AR at 334.]
21  Dr. Oey further indicated that plaintiff had a hard time interacting with others and was easily
22  frustrated and angry. [AR at 335.] He found that plaintiff had difficulty remaining focused for long
23  periods of time and understanding simple written and oral instructions. [AR at 335.] He also found
24  that plaintiff would have difficulty adjusting to stresses common to the work environment due to
25  his symptoms. [AR at 335.] Dr. Oey diagnosed plaintiff with intermittent explosive disorder, rule
26  /
27  /
28  /

7

1   out personality disorder, and assessed plaintiff with a Global Assessment of Functioning ("GAF")

2   score of 50.[4]  [AR at 336.]

3          On October 30, 2001, Dr. Oey noted that plaintiff was "guarded, suspicious" and prescribed

4   plaintiff Zyprexa in addition to Paxil and Buspar.  [AR at 355.]  On December 18, 2001, Dr. Oey's

5   assessment was as follows: "stills gets angry easily," paranoid, and depressed.  [AR at 353.]  On

6   February 5, 2002, Dr. Oey found that plaintiff still gets angry easily and was paranoid.  [AR at 350.]

7   He increased the dosage of plaintiff's prescription for Buspar.  [AR at 350.]  On March 19, 2002,

8   Dr. Oey's assessment was that plaintiff was "still angry a lot."  [AR at 349.]  He questioned whether

9   plaintiff was paranoid.  [AR at 349.]

10         In the decision, the ALJ found that the medical evidence failed to establish intermittent

11  explosive disorder and personality disorder as medically determinable impairments.  [AR at 414-

12  15.]  In so finding, the ALJ incorporated his discussion of Dr. Oey's opinion provided in the

13  previous decision of October 24, 2003, and relied on the reasons stated in that earlier decision to

14  reject Dr. Oey's opinion.[5]  [AR at 417.]  The ALJ gave less weight to Dr. Oey's September 11,

15  2001, opinion because Dr. Oey: (1) had only seen plaintiff twice and was still adjusting his

16  medications; and (2) failed to cite any standardized tests or clinical findings to substantiate his

17  _____

18     [4]   A Global Assessment of Functioning score is the clinician's judgment of the individual's
    overall level of functioning.  It is rated with respect only to psychological, social, and occupational
19  functioning, without regard to impairments in functioning due to physical or environmental
    limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental
20  Disorders ("DSM-IV") at 32 (4th Ed. 2000).  A GAF score of 41-50 indicates "[s]erious symptoms
    (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment
21  in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at
    34.
22

23     [5]   In the previous case (Case No. CV 05-2643-PLA) filed in this Court on April 12, 2005,
    plaintiff raised the following issues: (1) the ALJ erred in relying on the State Agency physician to
24  determine that plaintiff's impairments were not severe; and (2) the ALJ failed to properly consider
    the opinion of the treating psychiatrist, Dr. Oey.  [AR at 447.]  As noted above, the Court
25  determined that remand was appropriate to evaluate the severity of plaintiff's mental impairment
    in light of the recently submitted new evidence.  [AR at 443-52.]  The Court did not address
26  plaintiff's contention regarding the opinion of Dr. Oey based on its finding that the ALJ's
    consideration of the severity of plaintiff's mental impairment "may result in changes to the ALJ's
27  credibility analysis, which in turn may alter the ALJ's consideration of the opinion of plaintiff's
    treating psychiatrist."  [AR at 451-52.]
28

1    opinion. [AR at 37-38.] Plaintiff contends that the reasons cited by the ALJ are insufficient. The

2    Court agrees with plaintiff.[6]

3          The ALJ's rejection of Dr. Oey's opinion because he had only seen plaintiff twice and was

4    still adjusting plaintiff's medications at the time he rendered his opinion on September 11, 2001,

5    was improper. [AR at 37.] To the extent that the ALJ relied on indications in the record of

6    plaintiff's subsequent improvement on medication to reject Dr. Oey's opinion, such reliance is

7    insufficient, as the ALJ may not consider only those portions of the record that favor his ultimate

8    conclusion. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted

9    to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); see also

10   Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile

11   explicitly every conflicting shred of medical testimony," he cannot simply selectively choose

12   evidence in the record that supports his conclusions); Whitney v. Schweiker, 695 F.2d 784, 788

13   (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests

14   an opposite conclusion.") (citation omitted). While there is some indication in the record that

15   plaintiff's condition improved with medication after Dr. Oey rendered his opinion on September 11,

16   2001 [AR at 342, 345-46, 348-50, 355], there is also evidence in the record to suggest that

17   plaintiff's condition worsened over time. [AR at 15, 19-24, 349-50, 353, 355.] In several progress

18   notes dated after Dr. Oey's September 11, 2001, opinion, Dr. Oey found that plaintiff was still

19   angry, depressed, paranoid, and guarded. [AR at 349-50, 353, 355.] Indeed, in his last

20   assessment of plaintiff, despite his adjustment of plaintiff's psychotropic medications over the

21   course of his treatment of plaintiff, Dr. Oey noted that plaintiff was "still angry a lot." [AR at 349.]

22   Further, the progress note from Arcadia Mental Health Center dated July 13, 2004,[7] indicated that

23   _____

24        [6]   In light of the ALJ's finding in the decision that plaintiff did not have the medically
25   determinable impairments of intermittent explosive disorder and personality disorder, and given
     Dr. Oey's opinion to the contrary, the ALJ's decision should have contained specific and legitimate
26   reasons for rejecting the opinion of Dr. Oey. See discussion, infra.

27        [7]   Although the ALJ disregarded the assessment made on July 13, 2004, by Jose A.
28   Perez, a licensed clinical social worker, because a social worker is not an acceptable medical
     source [AR at 24, 414], the ALJ did not consider, or offer any reasons for rejecting, the

plaintiff had paranoid delusions, mood swings, anxiety, and depression.  [AR at 15.]  Plaintiff was diagnosed with depressive disorder, not otherwise specified ("NOS"), intermittent explosive disorder, psychotic disorder, NOS, and antisocial personality disorder.[8]  [AR at 15.]

In addition, the ALJ's assertion that Dr. Oey only saw plaintiff on two occasions before rendering his opinion on September 11, 2001, is inadequate.  The regulations define "treating source" as the claimant's physician, psychologist, or other acceptable medical source who has provided the claimant with medical treatment or evaluation and who has had an ongoing treatment relationship with the claimant.  See 20 C.F.R. §§ 404.1502, 416.902.  An ongoing treatment relationship with an acceptable medical source exists when the medical evidence establishes that the claimant has seen the source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)."  Id.  The Social Security Administration "may consider an acceptable medical source who has treated or evaluated [the claimant] only a few times or only after long intervals (e.g., twice a year) to be [the claimant's] treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)."  Id.  Here, Dr. Oey's opinion cannot be rejected merely because Dr. Oey only treated plaintiff twice before rendering his opinion regarding the impact of plaintiff's mental condition on his ability to work.  Indeed, on both occasions, Dr. Oey performed a mental status examination prior to diagnosing plaintiff, which supports his opinion.  [AR at 334, 363.] Further, as noted above, after rendering his opinion of September 11, 2001, Dr. Oey noted in several progress notes that plaintiff still gets angry easily, and is paranoid and depressed, which also supports his original opinion.  [AR at 349-50, 353, 355.]  Given Dr. Oey's treatment relationship, his opinion was entitled to more weight than the opinion of a nontreating source.  See discussion infra.

---

assessment set forth in the progress note dated that same day, which was signed by an unidentified source.  [AR at 15.]  Nor did the ALJ make an effort to determine the author of the progress note.

[8]   Plaintiff was assessed with DSM-IV diagnosis codes "311.00" (depressive disorder, NOS), "312.34" (intermittent explosive disorder), "298.90" (psychotic disorder, NOS), and "301.70" (antisocial personality disorder).  [AR at 15.]  See DSM-IV at 343, 381, 663-67, 701-06.

1    Moreover, the ALJ's conclusion that Dr. Oey failed to cite any standardized tests or clinical
2    findings to substantiate his opinion, and instead relied on the subjective complaints of plaintiff, is
3    insufficient, as it does not reach the level of specificity required in order to reject the opinion of a
4    treating physician.  See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that
5    medical opinions are not supported by sufficient objective findings or are contrary to the
6    preponderant conclusions mandated by the objective findings does not achieve the level of
7    specificity our prior cases have required, even when the objective factors are listed seriatim.  The
8    ALJ must do more than offer his conclusions.  He must set forth his own interpretations and
9    explain why they, rather than the [treating] doctors', are correct.") (footnote omitted); see also
10   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating
11   physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad
12   and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

13   Furthermore, the ALJ's assertion concerning the lack of any standardized tests or clinical
14   findings to support Dr. Oey's opinion is not wholly accurate.  It is improper to reject a treating
15   physician's opinion based on lack of objective medical findings where he provided at least some
16   objective observations and testing in addition to subjective opinions.  See Embrey, 849 F.2d at
17   421; see also 20 C.F.R. §§ 404.1527, 416.927 (the proper weight that an ALJ should give to a
18   treating physician's opinion depends on whether sufficient data supports the opinion and whether
19   the opinion comports with other evidence in the record); Sprague, 812 F.2d at 1232 (when the
20   treating physician diagnosed the claimant with depression, set forth clinical observations
21   supporting the diagnosis, and prescribed psychotherapeutic drugs, the ALJ erred in finding that
22   the claimant had not set forth sufficient evidence to substantiate the mental impairment).  Here,
23   on July 24, 2001, Dr. Oey performed an initial psychiatric evaluation of plaintiff, which included a
24   mental status examination.[9]  [AR at 360-64.]  He noted that plaintiff's motor activity was
25   "somewhat tense," memory and concentration were impaired, and mood was anxious.  [AR at

26
27
28      [9]   Clinical findings include the results of mental status examinations.  See 20 C.F.R. §§ 404.1513, 416.913.

11

363.]  He further noted the following behavioral disturbances: violent/destructive, poor impulse control, excessive/inappropriate anger, antisocial, isolated, and withdrawn.  [AR at 363.]  Dr. Oey diagnosed plaintiff with intermittent explosive disorder, rule out depressive disorder with anxiety, and assessed plaintiff with a current GAF score of 50.  [AR at 364.]  On September 11, 2001, in connection with the Evaluation Form for Mental Disorders, Dr. Oey performed another mental status examination and found that plaintiff had a fearful attitude, difficulty with concentration and memory, difficulty following orders, poor impulse control, withdrawal and isolation issues, and was easily agitated and irritable.  [AR at 334.]  Dr. Oey again diagnosed plaintiff with intermittent explosive disorder, assessed plaintiff with a GAF score of 50,[10] and prescribed psychotropic medications.  [AR at 336.]  Thereafter, Dr. Oey treated plaintiff on several occasions and prescribed medications.  [AR at 349-50, 353, 355.]  Indeed, during the course of plaintiff's treatment, Dr. Oey performed further mental status examinations of plaintiff, in which he noted depression and paranoia and found that plaintiff still gets angry easily.  [Id.]  Not only is Dr. Oey's opinion supported by the findings of the mental status examinations performed in connection with the questionnaire and the evaluation of plaintiff on September 11, 2001, but it is also supported

---

[10]   As discussed, Dr. Oey assessed plaintiff with a GAF score of 50 on July 24, 2001, and September 11, 2001, which the ALJ failed to discuss in the decision.  [AR at 336, 364.]  While a GAF score may not have a "direct correlation" to the Social Security severity requirements in the Listings (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that Dr. Oey's assessment of a GAF score of 50 and its implications may be ignored or its implications rejected without sufficient reason.  See Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted); see also Sorenson v. Astrue, 2008 WL 1914746, at *18 (N.D. Iowa Apr. 28, 2008) (a GAF score is used by medical professionals "'to consider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness'") (citations omitted); Blake v. Astrue, 2008 WL 2224847, at *6 (D. Kan. May 27, 2008) (a GAF score of fifty or less may suggest an inability to keep a job); Dempster v. Astrue, 2008 WL 4381541, at *2 (C.D. Cal. Sept. 23, 2008) ("GAF scores can be probative of a claimant's mental health on a given day and should at least be acknowledged by the ALJ"); Escardille v. Barnhart, 2003 WL 21499999, at *5-6 (E.D. Pa. June 24, 2003) (ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment" was error).

1   by Dr. Oey's subsequent treatment records as a whole.[11]  Given that there are clinical findings that

2   lend support to Dr. Oey's opinion, the ALJ's rejection of the opinion of Dr. Oey as lacking

3   supporting clinical findings itself lacks substantiation.

4            Finally, to the extent that the ALJ rejected the opinion of Dr. Oey based on the opinions of

5   the nonexamining State Agency medical experts, such a rejection, without more, is insufficient. The

6   ALJ may only give less weight to a treating physician's opinion that conflicts with that of another

7   physician if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion.

8   See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another

9   doctor, can only be rejected for specific and legitimate reasons that are supported by substantial

10  evidence in the record); see also Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (the

11  opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies

12  the rejection of a treating physician).  Here, as discussed above, the ALJ did not provide legally

13  sufficient reasons for his rejection of Dr. Oey's opinion.  Thus, the ALJ's reliance on the medical

14  expert's testimony that plaintiff does not have any medically determinable psychiatric impairment,

15  e.g., intermittent explosive disorder, was misplaced. [AR at 414-15, 660, 662-63.] Generally, more

16  weight is given to the opinions of treating physicians because they "are likely to be the medical

17  professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical

18  impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained

19  from the objective medical findings alone or from reports of individual examinations, such as

20  consultative examinations or brief hospitalizations."      See 20 C.F.R. §§ 404.1527(d)(2),

21  _____

22       [11]   In the Joint Stipulation, defendant contends that the clinical evidence cited by plaintiff in
    support of Dr. Oey's opinion does not meet the requirements for a medical report under the Social
23  Security regulations.  Joint Stip. at 14.  However, defendant's contention was not proffered by the
    ALJ in the decision as a rationale for rejecting the opinion of Dr. Oey.  As such, defendant's post
24  hoc attempt to justify the ALJ's rejection of Dr. Oey's opinion is not sufficient to cure the error.  See
    Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may
25  affirm an administrative decision only on grounds articulated by the agency); see also Barbato v.
    Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may
26  remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not
    adequately explain how a conclusion was reached, even if Social Security Administration can offer
27  proper post hoc explanations for such unexplained conclusions).

28

1   416.927(d)(2).    Dr. Oey treated plaintiff on several occasions, performed mental status

2   examinations of plaintiff, and prescribed psychotropic medications to plaintiff.  See 20 C.F.R. §§

3   404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii) (weight accorded to a treating physician's opinion

4   dependent on length of the treatment relationship, frequency of visits, and nature and extent of

5   treatment received).  Based on the length of the treatment relationship and Dr. Oey's experience

6   with plaintiff, Dr. Oey had the broadest range of knowledge regarding plaintiff's medical condition.

7   See Smolen, 80 F.3d at 1279; see also Lester, 81 F.3d at 833 ("The treating physician's continuing

8   relationship with the claimant makes him especially qualified . . . to form an overall conclusion as

9   to functional capacities and limitations, as well as prescribe or approve the overall course of

10   treatment.").

11          The ALJ's failure to provide legally sufficient reasons that are supported by substantial

12   evidence for discounting Dr. Oey's opinion regarding plaintiff's mental condition warrants

13   remand.  See Embrey, 849 F.2d at 422 (in disregarding the findings of a treating physician, the

14   ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective

15   factors" he identifies to "the specific medical opinions and findings he rejects"); see, e.g., Nelson

16   v. Barnhart, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give

17   sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the

18   matter for 'proper consideration of the physicians' evidence.'") (brackets in original) (citation

19   omitted).

20          Plaintiff further contends that the ALJ improperly declared plaintiff a non-essential witness

21   and proceeded without him at the March 3, 2008, hearing.  Joint Stip. at 22-25.  In light of the

22   Court's conclusion that the ALJ failed to properly consider the opinion of Dr. Oey concerning

23   plaintiff's mental condition, the ALJ is instructed on remand to conduct another hearing in order

24   to consider plaintiff's testimony.  Accordingly, remand is warranted.

25   /

26   /

27   /

28   /

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to properly consider the opinion of Dr. Oey.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: July 15, 2009

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE